UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHANIE GILMORE,

        **Plaintiff,**

  v.                                    1:19-cv-888

SARATOGA CENTER FOR CARE, LLC,

        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

Before the Court is Defendant's motion to dismiss this Complaint, which alleges employment discrimination under state and federal law. See dkt. # 36. Plaintiff, proceeding *pro se*, opposes the motion. Defendant did not file a reply to Plaintiff's response, and time for such filing has passed. The Court will decide the motion without oral argument.

**I.    BACKGROUND**

This case arises out of Plaintiff's employment with Defendant Saratoga Center for Care, LLC. See Complaint ("Complt."), dkt. # 1. Plaintiff alleges that she worked for the Defendant, which operates a 237-bed nursing facility, as a registered nurse supervisor. Id. at 3.[1] Plaintiff claims that the facility was short of nurses, which caused her to work

---

[1] Plaintiff used a form to file her Complaint. She also included a separate typewritten description of the conduct she claims violated her rights. The Court's citations to page numbers in the Complaint refer to the pagination in that separate document.

1

frequent overtime.  Id.  She also had responsibility for supervising multiple units.  Id. Plaintiff's supervisor often praised her "for keeping the resident[s] safe while severely understaffed."  Id.

Despite the quality of her work, Plaintiff alleges that she had conflicts with some supervisors and coworkers.  Id. at 4.  Defendant's director of human resources falsely accused Plaintiff of violating the company's social media policies; Plaintiff, who is black and of Haitian descent, alleges that her race played a role in this false accusation.  Id.  Other employees disrespected Plaintiff's knowledge and experience.  Id. at 4-5.

Plaintiff also alleges that she reported a situation where a patient left the resident and wandered outside to the Department of Health.  Id. at 5.  She contends that the Defendant withheld information from state investigators and prevented those investigators from interviewing other residents with information on the situation.  Id.  After Plaintiff made that report, she claims, Defendant began to "harass" and "sabotage" her.  Id. at 6.  Plaintiff had frequent conflicts with a coworker, and that coworker made "baseless complaints and continued to attempt to sabotage me and" the "night staff," who "all happen to be black."  Id. at 7.  This coworker went to a supervisor in an attempt to have Plaintiff fired.  Id.  Plaintiff received blame for a resident complaint, even though she was not on duty at the time of the complaint.  Id. at 8.  A coworker also falsely accused Plaintiff of failing to document an incident with a patient.  Id.  The person who made this accusation, Plaintiff claims, sought to have Plaintiff and other black workers fired.  Id. at 8-9.  Another coworker allegedly made negative comments about Haitian nurses working at the facility.  Id. at 9.

On February 26, 2019, Plaintiff alleges that a patient became ill due to a change in her medication.  Id. at 10-11.  That patient eventually required emergency intervention.  Id.

2

at 11. Plaintiff claims that an employee altered electronic medical records to "discontinue the narcotic that was increased." Id.  Plaintiff urged a supervisor to report this suspicious action, since she and the supervisor were "mandated reporters." Id.  The next day, Plaintiff received an email directing her not to return to work until she spoke to a supervisor. Id. Plaintiff emailed this supervisor a week later, but never received a response. Id.  After Plaintiff learned that the supervisor to whom she had reported the altered medical record had left Defendant's employ, Plaintiff reported the incident to the Department of Health. Id.

Plaintiff spoke with Defendant's human resources director on March 5, 2019 about her employment status. Id.  While Plaintiff waited for a response, she found another job. Id. at 12.  After Plaintiff started her new job she retained "administrative access" to Defendant's system. Id. at 12.  On March 29, 2019, Plaintiff contacted the person who had formerly served as Defendant's scheduler. Id.  That person promised to contact Plaintiff when she found out was happening. Id.  On April 3, 2019, this person informed Plaintiff that she had been "clear[ed] to return to work," but that Plaintiff needed to "sit down with the new director of nursing." Id.  The meeting was set for April 8, 2019. Id.

When Plaintiff arrived at her interview, a person with whom she had previously had conflict saw her arrive and "immediately went into the director of nursing office." Id.  Plaintiff then had "to wait 37 minutes to speak with the director of nursing." Id.  The new director of nursing turned out to be the person who had hired her for her new job. Id.  The director examined Plaintiff's employment file, and then went to speak with Danielle Zastaway, a supervisor. Id.  Plaintiff attempted to explain the history of her conflicts at the facility. Id. Rather than discuss these issues, the director told Plaintiff that "we are terminating you." Id. After Plaintiff pressed for clarification, the supervisor explained that "Danielle [Zastaway]

3

told him that she got a complaint from" a resident who had previously falsely accused Plaintiff of misconduct. Id. at 12-13.

Plaintiff received a letter terminating her employment on April 15, 2019. Id. at 13. The letter was dated April 8, 2019. Id.

Plaintiff alleges that she suffered discrimination "because I am a black registered nurse" who "is assertive and intelligent." Id. Plaintiff alleges that "Saratoga [C]enter operates in a biased, and racial[ly] discriminatory manner. Black employees are targeted and terminated" because of "infractions" for which "white employees get a slap on the wrist." Id. at 14. Plaintiff describes Defendant's alleged disparate treatment of white and black employees. Id. Black employees, she claims, received punishment or even termination for conduct which Defendant excused among white nurses. Id.

Plaintiff contends that Defendant violated state and federal law by discriminating against her because of her race. Id. at 15. She seeks "a letter of apology for wrongful termination," "better policies to be put in place to truly protect mandated reporting obligations," "lost wages from the period of 12/26/19-04/08/19" and "punitive damages for retaliation and unwarranted harassment and attempted sabotage." Id.

Plaintiff named Danielle Zastawny as a Defendant in her Complaint. She also filed a motion for leave to proceed *in forma pauperis*. Magistrate Judge Christian F. Hummel gave the Complaint an initial review after Plaitniff filed the motion. See dkt. # 4. Judge Hummel granted the motion to proceed *in forma pauperis*. Id. He also recommended that the Court dismiss any Title VII claims against Zastawny with prejudice and recommended service of the Complaint on Saratoga, the remaining Defendant. Id. The Court adopted the Report-Recommendation on November 21, 2019. See dkt. # 5. Plaintiff eventually served the

4

Complaint on Saratoga.  Defendant then filed the instant motion.

## II.     LEGAL STANDARD

The Defendant has filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant argues that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  When, as here, the Plaintiff proceeds *pro se*, the Court "'construe[s] [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).  "This is especially true when dealing with pro se complaints alleging civil rights violations."  Id.

## III.    ANALYSIS

Defendant seeks dismissal on several grounds, which the Court will address in turn, as appropriate.

### A.     Exhaustion of Administrative Remedies

Defendant first argues that Plaintiff failed to exhaust her administrative remedies and

5

therefore cannot bring a Title VII claim. Defendant points out that Plaintiff attached a dismissal and notice of rights from the Equal Employment Opportunity Commission ("EEOC") to her complaint. That notice is dated March 27, 2019, before Plaintiff filed a complaint with the New York State Division of Human Rights, which provides the basis for the claims in this matter. Indeed, Plaintiff's Complaint in this Court references that earlier complaint to the EEOC. Thus, Defendant claims, Plaintiff failed to seek administrative relief on the claims that are the subject of this litigation, and the case must be dismissed. Even if that notice provided Plaintiff with a right to sue in this matter, Defendant argues, she filed her claims too late to meet the statutory requirement that she file a claim within 90 days of receiving her right-to-sue letter.

"'As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC.'" Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (quoting Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003)). To meet this requirement "an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.'" Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015) (quoting Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006)). A plaintiff must file a timely agency complaint and "must receive a 'Notice of Right to Sue' letter from the EEOC" before filing the complaint in court. Id. (quoting Williams, 458 F.3d at 70). While the agency complaint should describe the discriminatory actions at issue, "claims not raised in an EEOC complaint may still be part of the complaint later filed in federal court 'if they are reasonably related to the claim filed with the agency.'" Id. (quoting Williams, 458 F.3d at 70)). "[A] claim is reasonably related to the filed claim 'if the conduct complained of would

fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Id. (quoting Deravin, 335 F.3d at 200-201).

Plaintiff's Complaint alleges that "I have filed an earlier complaint with the U.S. Equal Employment Opportunity Commission, charge number 525-2019-00680, and New York State Department of labor prior to my termination." Comptl. at 17. Plaintiff's Response to Defendant's motion includes a copy of the EEOC's response to that charge. See Exh. E to Plaintiff's Response, dkt. # 39. That letter, dated March 27, 2019, informs Plaintiff that the document is her "Notice of Dismissal and Right to Sue." Id. The letter further informs Plaintiff that "you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice, or by contacting the New York State Division of Human Rights. Otherwise, your right to sue will be lost." Id. Plaintiff filed her suit in this Court on July 23, 2019, more than 90 days after she received her right-to-sue letter. See Complt.

Plaintiff's response to Defendant's motion contains correspondence between the New York State Division of Human Rights and the Plaintiff. See Exh. B to Plaintiff's Response, dkt. # 39. That correspondence, dated November 22, 2019, represents that on May 20, 2019, Plaintiff "filed a verified complaint with the New York State Division of Human Rights." Id. She complained that Defendant engaged in "an unlawful discriminatory practice relating to employment because of race/color, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law"). The letter further related that "[a]fter investigation, the Division has determined that it has jurisdiction in this matter and that PROBABLE CAUSE exists to believe that the Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." Id. (emphasis in original).

The Division of Human Rights "recommended" the matter "for public hearing" and noted that "[t]he parties will be advised of further proceedings." Id.  Plaintiff also includes a "final investigation report and basis for determination." Id.  The facts related in that document indicate that the Complaint that Plaintiff filed in this Court contains much the same set of factual allegations as the complaint she filed in the Division of Human Rights. Id. at 2-5.  The document also describes the investigator's conversations with Defendant's employees about Plaintiff's firing. Id. at 5-6.  The investigator concluded that "evidence" existed "to indicate that Complainant may have been subjected to unlawful discrimination on the basis of race and opposed discrimination." Id. at 6.  Because "material issues of fact" remained " in dispute, . . . includ[ing] whether . . . the Complainant was subjected to a hostile work environment because of her race, whether . . . Complainant was suspended because of her race and/or because she opposed discrimination, and whether . . . the Complainant was terminated because of her race and/or because she opposed discrimination," the investigator concluded a hearing was necessary. Id. at 8.  The document ends with a conclusion from the investigator that "NO PROBABLE CAUSE to support the allegations in the complaint" exists.  Id. (emphasis in original).

New York Law provides that:

9. Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, including, in cases of employment discrimination related to private employers and housing discrimination only, punitive damages, and such other remedies as may be appropriate, including any civil fines and penalties provided in subdivision four of this section, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this article, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall

8

> maintain all rights to bring suit as if no complaint had been filed with the division.

NY Exec. L. § 297(9). "This provision requires a plaintiff to elect a remedy for a discrimination claim. The plaintiff can bring either an administrative action or a court proceeding, but not both." Promisel v. First Am. Artificial Flowers, 943 F.2d 251, 257 (2d Cir. 1991). "Once the plaintiff has commenced an administrative proceeding the plaintiff cannot bring a court action while the administrative proceeding is ongoing." Id.

That statute complicates the Court's task in resolving the instant motion, both in terms of whether Plaintiff has exhausted her administrative remedies and in terms of whether she may bring state-law claims based on the facts she alleged in her Division of Human Rights claim. As a general matter, "[i]f a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of the state court, must follow the state's jurisdictional determination and not allow the claim to be appended to a federal law claim in federal court." Id. at 257. As the Court noted in Promisel, "Section 297 clearly provides that a plaintiff whose complaint before the state agency is dismissed for administrative convenience may seek a court remedy." Id. Thus, though filing the state-law administrative complaint would appear to divest the Court of jurisdiction for any state-law claims arising from the same set of facts, nothing before the Court establishes the outcome of those administrative proceedings.

Moreover, there is evidence that Plaintiff filed some sort of Complaint regarding her termination with an appropriate State agency. She does not appear to have included the EEOC in that filing. She may have elected a remedy for her discrimination, decided to concentrate on state-law claims, and neglected to obtain any sort of administrative outcome

9

from an agency that would provide her with a right to bring a Title VII claim. Without more information on the nature and the outcome of the state proceeding, however, the Court cannot reach a conclusion about whether Plaintiff exhausted her administrative remedies before bringing her Title VII claim. The Court also cannot determine whether this Court can entertain claims that grow out of the same allegations and facts raised in the state administrative proceedings.

The Court's ability to resolve these matters would have been enhanced had the Defendant bothered to file a reply to the Plaintiff's response. This is especially so because "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018). Because of the unresolved factual situation before the Court, Defendant has failed to meet its burden on the matter of exhaustion. That unsettled situation also prevents the Court from determining whether to exercise pendent jurisdiction over the state-law claims, and from determining whether any court could hear those claims.

Given this situation, the Court will deny Defendant's motion to dismiss without prejudice. Defendant will be permitted to re-file the motion to argue the issue of exhaustion based on the nature and status of Plaintiff's state administrative filing, and to make any arguments regarding her state-law claims that seem appropriate. The Court reminds the Defendant that leave is not required to file a reply to a response to a dispositive motion, and that such replies often help the Court resolve cases.

## IV.   CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss, dkt. # 36, is hereby

**DENIED** without prejudice to re-filing.  Defendant may file a renewed motion to dismiss within fourteen days of the date of this order.  If Defendant files such a motion, the Court will set a briefing schedule.  If Defendant fails to file such a motion, Defendant shall file an answer to the Complaint within 21 days of the date of this order.  Plaintiff's letter motion seeking an update on the status of Defendant's motion, dkt. # 40, is hereby **DENIED** as moot.  The above decision and order provides that update.

**IT IS SO ORDERED**

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge

Dated: April 25, 2022